IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| RICKY GONZALES, | § § § | |
| *Plaintiff*, | § § § | 5-17-CV-00998-OLG-RBF |
| vs. | § § § | |
| CITY OF SAN ANTONIO, | § § § | |
| *Defendant*. | § § § § § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable Chief United States District Judge Orlando Garcia:**

This Report and Recommendation concerns the Motion for Summary Judgment filed by Defendant City of San Antonio. Dkt. No. 24. The District Court referred all pretrial matters to me for disposition, pursuant to Western District of Texas Local Rules CV-72 and 1 to Appendix C. *See* Dkt. No. 10. My authority to enter this recommendation stems from 28 U.S.C. § 636(b)(1)(B). The Court has federal question jurisdiction in this § 1983 case. *See* 28 U.S.C. § 1331.

Through this action, Plaintiff Ricky Gonzales, a former employee of the San Antonio Parks and Recreation Department, sues the City in connection with his alleged wrongful termination. The City terminated Gonzales's employment after he failed a drug test. As part of his duties as a maintenance worker for the Parks and Recreation Department, Gonzales drove one of the City's trucks. *See* Gonzales Decl. ¶ 5. Gonzales primarily takes issue with the

procedures associated with the test, including the timing of when the test was administered; he doesn't dispute the test's results.

For the reasons discussed below, the City's Motion for Summary Judgment Dkt. No. 24, should be **GRANTED**, and the case should be dismissed.

I.  **Factual and Procedural Background**

On the afternoon of April 20, 2016, a fellow employee reported that Gonzales had damaged another vehicle while Gonzales parked his truck and trailer in the City's yard. *Id.* ¶ 9. The parties dispute whether Gonzales hit the other vehicle or damaged it. According to Gonzales, neither he nor his supervisor Richard Gatlin found any visible damage on either vehicle. *Id.* ¶ 9. It's undisputed that no one was injured in the alleged accident, no vehicles were towed, and Gonzales didn't receive a citation. *Id.* ¶¶ 9, 11. Following the aforementioned inspection of the vehicles, Gatlin permitted Gonzales to leave work for the day. *Id.* ¶ 9.

But either later that day or during the morning of the next, an employee emailed Gatlin photographs allegedly showing damage to the left front bumper of the other vehicle. *See* Def. Exs. 3 & 8. Gatlin and another employee then located the alleged damage. *See* Def. Exs. 3 & 8. An incident report was ultimately completed by both the City and the San Antonio Police Department, although the police were unable to determine how the "minor damage" to the other vehicle occurred. *See id.* & Exs. 9-10.

Then, at approximately 7 am that same next morning, Parks and Recreation Safety Coordinator Robert Jones informed Gonzales that he needed to take a drug test because of the previous day's incident. Gonzales Decl. ¶ 13. Gonzales initially refused. He maintained that the City's Drug Testing Policy required that all drug tests be administered *on the same day* of an accident. *Id.* But he then relented and took the test after being told that continued refusal would

result in termination. *Id.* According to Gonzales, he submitted to the test "under pressure" because he didn't want to lose his job *Id.* ¶ 14. The test results later came back positive for amphetamines, benzodiazepines, oxazepam, and temazepam. *See* Def. Ex. 11. The results of the test aren't in dispute.

Citing the drug-test results, the City, on or about April 25, 2016, issued Gonzales a Notice of Proposed Termination for "[t]esting positive for illegal drugs during the post-accident alcohol/drug screen, per City policy." *See* Def. Exs. 12-14. On May 4, Gonzales, now assisted by his attorney, submitted a response objecting to the proposed termination because (1) the City had failed to follow its own drug-testing policy when requiring that he submit to the test, including by requiring that he take the test the next day. *See* Def. Ex. 12. Further, referring to the City's policy, Gonzales additionally argued (2) there was no reasonable suspicion that he was under the influence of an intoxicating substance to warrant requiring him to take a drug test. He also pointed out that (3) the accident didn't involve death or bodily injury, (4) "disabling damage" to either vehicle, or (5) the striking of a pedestrian, and he further urged that (6) a citation was never issued. The City, pursuant to its own policy providing these bases for requiring a drug test, shouldn't have subjected him to a drug test, Gonzales argued. *See id.* (citing AD 4.3 policy). Gonzales didn't, however, dispute the actual testing procedures (beyond the timing of, and necessity for, the test). He also, as already mentioned, didn't take issue with the accuracy of the results. On this last point, Gonzales instead pointed out that under a physician's direction he takes Orthopedic Meloxicam (a nonsteroidal anti-inflammatory) and Cyclobenzaprine (a muscle relaxant) to ease knee pain, as well as several over-the-counter physician-recommended medicines. *See id.* The combination of these prescription and over-the-counter medications, Gonzales contended, would yield a positive drug test. *See id.*

On May 12, 2016, the City issued a Notice of Final Termination, citing the City's zero-tolerance policy for illegal drugs. *See* Def. Ex. 14 at 4-6. Gonzales appealed the termination decision, and on July 28, 2016, the Civil Service Commission held a hearing on the appeal. *See* Def. Exs. 2-7 & 15. Both Gonzales and the City were permitted to introduce evidence and examine and cross-examine witnesses. *See* Def. Exs. 2-7. During this hearing, Gonzales again opposed his termination—again on the ground that the City violated its own drug-testing policy by (1) requiring him to take a test even though the accident didn't fall within any of the circumstances delineated in the City's written policy and (2) requiring him to take a drug test the day after the alleged incident. *See* Def. Exs. 2-7. Although Gonzales also argued that his medications could result in a positive drug test, he didn't produce any evidence (such as testimony from a doctor) tying his medications to the drugs or types of drugs found in his system. *See* Def. Exs. 2-7.

In response, Parks and Recreation Department officials explained that the Department's own unwritten policy requires that a drug test be taken on every accident, regardless of the extent of the damage or who is at fault, and emphasized that the City also has a zero-tolerance policy for drugs. *See* Def. Exs. 2-7. City officials also disputed whether Gonzales ever informed them of his prescriptions as allegedly required by the City's policy, and further argued that Gonzales failed to show the relevancy of these prescriptions.

At the conclusion of the hearing, the Commission unanimously recommended that the City Manager sustain Gonzales's termination, concluding that the evidence and testimony supporting a violation of Civil Service Rule XVII, Section 2(g) and the City's Drug and Alcohol Policy ("AD 4.3"). *See* Def. Exs. 7 & 17.

Gonzales subsequently requested reconsideration, arguing that his prescriptions offered a valid excuse for his positive drug test. *See* Def. Ex. 18. On September 2, City Assistant Manager Maria Villagomez and the Assistant Human Resources Director Renee Frieda met with Gonzales and recommended that he submit his prescriptions to the Medical Review Officer for reconsideration. *See id.* Ultimately, however, Gonzales's request for reconsideration was denied. *See id.* Per the Medical Review Officer, "none of the medications listed, on [Gonzales's] submitted prescriptions[] would account for the substances that tested positive on [his] drug test." *Id.*

The City Manager accepted the Commission's recommendation on October 24, 2016. *See* Def. Ex. 19.

Gonzales initiated this § 1983 action on August 22, 2017, in Bexar County state court. He alleged the City violated his substantive and procedural due process rights, his right to equal protection under the law, and "right of liberty of gainful employment and free of defamation by government action and officials." *See* Orig. Compl. The City removed the action to federal court and moved to dismiss under Rule 12(b)(6).

On June 12, 2018, I recommended that the City's Motion to Dismiss be granted but that Gonzales be permitted an opportunity to amend his Complaint to cure several deficiencies outlined in the Report and Recommendation. *See* Dkt. No. 15. The District Court adopted the Report and Recommendation but warned Gonzales that if his amended pleading didn't cure the deficiencies, his claims would be dismissed with prejudice. *See* Dkt. No. 16.

Gonzales filed an Amended Complaint on July 24, which is the live pleading. *See* Amend. Compl. (Dkt. No. 17). Under a single heading titled, "Causes of Action, 42 U.S.C. Sec. 1983," Gonzales claims his termination violated his procedural and substantive due process

rights in that (1) there are "two (2) separate distinct Drug Testing Policies each one delineating different requirements and circumstances under which an employee of Defendant, City is required to take a drug test"; (2) the City does not equally apply its drug-testing to all employees; and (3) the City refused to consider the medical evidence offered by Gonzales. Gonzales also summarily alleges that the City violated his right to equal protection under the law, his "right of liberty of gainful employment and free of defamation by government action," and "falsely stigmatized [him] as a drug user." *Id.* ¶¶ 43-44. Gonzales seeks damages in the form of back pay and compensation for mental anguish, reputational damages, and loss of benefits. *Id.* ¶ 47. In the course of lodging these claims, Gonzales (again) doesn't allege that the drug-test results were in error. He also doesn't explain why his prescription(s) would or could excuse his positive test result, which include a positive result for amphetamines.

The City now moves for summary judgment on Gonzales's due process claims. *See* Def. Mot.

### II. Analysis

The City is entitled to judgment as a matter of law on Gonzales's due process claims. Further, although the City hasn't moved for summary judgment on Gonzales's equal protection and liberty interest/defamation claims, Gonzales still hasn't cured the pleading deficiencies associated with those claims that were addressed in the Court's prior Report and Recommendation. Accordingly, those claims should also be dismissed.

*Due Process*. "A municipality cannot be held liable under § 1983 if there is no underlying constitutional violation." *Hale v. Bexar County, Tex.*, 342 Fed. App'x 921, 925 (5th Cir. 2009). Here, there is no indication of a constitutional violation.

"To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his

employment, and (2) that the public employer's termination of that interest was arbitrary or capricious." *Lewis v. Univ. of Tex. Med. Branch at Galveston*, 665 F.3d 625, 630 (5th Cir. 2011) (quotation marks omitted). "[S]ubstantive due process requires only that public officials exercise professional judgment, in a nonarbitrary and noncapricious manner, when depriving an individual of a protected property interest." *Id.* (quotation marks omitted). An employment decision is arbitrary or capricious if the decision is made "without a rational connection between the known facts and the decision or between the found facts and the evidence." *Id.* (quotation marks omitted). An arbitrary or capricious employment decision is one that involved an "abuse of power by the [ ] official [that] shocks the conscience." *Id.* (quotation marks omitted).

Regarding procedural due process, I note that procedural due process "entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995) (citing *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).

It is uncontested that Gonzales—as a civil service employee—had a protected property interest in his continued employment. But even so, the undisputed evidence could not support a finding that the City acted arbitrarily or capriciously in connection with its decision to end Gonzales's employment. Gonzales admits that he tested positive for prohibited drugs, and he doesn't dispute the accuracy of the test results. *See, e.g., McKendall v. City of New Orleans*, No. CIV. A. 92-2393, 1993 WL 85954, at *5 (E.D. La. Mar. 12, 1993) ("McKendall's dismissal was not arbitrary or capricious, as he had tested positive for an illegal drug."); *Adler v. County of Nassau*, 113 F. Supp. 2d 423, 432 (E.D.N.Y. 2000) (no denial of substantive due process where

7

plaintiff's drug test proved positive for valium, and there was no allegation that the results had been falsified).

What Gonzales complains of is at most a harmless and purely technical departure from an internal procedure, with no independent harm stemming from it beyond the mere failure to follow a procedure. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547-50 (2016) (discussing how purely technical violations of internal procedures may not cause harm sufficient to confer standing). A mere technical failure by the City to comply with its own internal policies and "procedures does not by itself amount to a violation of the Due Process Clause"; the failure "to comply with [ ] internal regulations is insufficient as a matter of law to establish a violation of Due Process," so long as "constitutional minima . . . have been met" with regard to notice and other due process protections. *Brown v. Texas A & M Univ.*, 804 F.2d 327, 335 (5th Cir. 1986); *see also Levitt v. Univ. of Texas at El Paso*, 759 F.2d 1224, 1230 (5th Cir. 1985) (There is not a violation of due process every time a . . . government entity violates its own rules. . . . [U]nless the conduct trespasses on federal constitutional safeguards, there is no constitutional deprivation."). The relevant inquiry, therefore, is not whether the City violated its policies but rather whether the City could be found to have fallen constitutionally short in providing Gonzales notice or other guaranteed substantive or procedural protections. The law and summary judgment evidence—even with the latter viewed in Gonzales's favor—reflects that no due process violation could have occurred here.

To begin, there's no dispute that Gonzales was aware of the City's zero-tolerance drug-and-alcohol policy that provides for random drug testing at any time, with only two-hours' notice. *See* Def. Ex. 15 (Dkt. No. 24-1 at 76- 85). Thus, even assuming Gonzales never received notice of the Parks and Recreation Department's policy, it couldn't as a matter of law "shock the

conscience" to subject him to a drug test in the context of the undisputed facts and circumstances presented here. For much the same reason, its largely irrelevant that Gonzales took the test the day after the incident instead of that same afternoon or evening. There doesn't appear to be anything in the City-wide policy, and there isn't anything in the relevant due process protections that control the inquiry, that requires *only* a same-day post-accident drug test. In any event, the uncontested evidence establishes that the traffic incident here occurred late in the day and after either all or at least a majority of the witnesses had already left for the day. *See* Def. Ex. 3. Given that random tests are authorized, it makes abundant sense under these undisputed facts to administer a test and to do so the next day, and it certainly did not—and could not as a matter of law—shock the conscience to do so.

The undisputed evidence establishes that the City provided Gonzales with both notice and an opportunity to "present his side of the story" prior to his termination. *Fowler*, 68 F.3d at 127.[1] Accordingly, the pre-termination process employed by the City here sufficiently served as "an initial check against [a] mistaken decision[]." *Loudermill*, 470 U.S. at 545. Additionally, Gonzales received a full evidentiary post-termination hearing at which he was permitted to present evidence and cross-examine witnesses. There is no evidence (or argument) suggesting that the Civil Service Commission was biased, and Gonzales concedes that he wasn't prohibited from calling any witness to testify. *See* Def. Ex. 16, Resp. No. 12. Gonzales does not have an actionable procedural due process claim merely because he disagrees with the results after having been afforded ample process, yet that appears to be the gravamen of his argument. *See,*

---

[1] *See also Browning v. City of Odessa, Tex.*, 990 F.2d 842, 844 (5th Cir. 1993) (pre-termination hearing given city fire fighter complied with due process; fire fighter was given notice of proposed dismissal, informed of reasons for dismissal, and given opportunity to respond; although meeting between fire chief and fire fighter lasted no more than thirty minutes, the "Due process Clause required nothing more since a full evidentiary pos-termination hearing was available").

9

*e.g.*, *Clarke v. Univ. of N. Texas*, 993 F.2d 1544 (5th Cir. 1993) (noting, "[p]rocedural due process rights do not guarantee a particular outcome to a disciplinary proceeding but only assure that it is fairly conducted"); *Moreno v. Donna Indep. Sch. Dist.*, No. 7:12-CV-141, 2013 WL 12099971, at *2 (S.D. Tex. Mar. 1, 2013) ("While Plaintiff may disagree with the outcome, the evidence and Plaintiff's own admissions makes clear he received appropriate notice and a hearing.").

Gonzales focuses improperly on whether the City "violated" its own policies on drug testing. As just discussed, this isn't the appropriate focus of the inquiry given the nature of the claims at issue. This argument is also unfounded on this summary judgment record. It's true that the City-wide written drug policy delineates several specific circumstances in which an employee will be subject to a drug test. But in doing so, the policy by its own terms sets a drug-testing floor, not a ceiling. The policy explains that "[Department] [p]olicies may be more stringent but never more lenient than this administrative directive." Def. Ex. 15 (Dkt. No. 24-1 at 83). And, as already discussed, the alleged application of a more stringent Parks and Recreation Department policy didn't as a matter of law contravene any constitutional guarantees here under the undisputed facts.

Gonzales's attempts to excuse his positive drug test with reference to his prescription and other medications also fail. He concedes that the combination of his prescription pain and over-the-counter medications would have resulted in a positive test. *See* Def. Ex. 12. Yet there is no evidence in the record to support his contention that having a physician's order directing him to take certain medications meant that the City had approved his use of those medications *while driving a City vehicle*. The record evidence, in fact, points firmly against Gonzales in this regard, leaving no room for any genuine factual dispute. His Fitness for Duty Forms, for example, don't

mention any medication restrictions. *See* Def. Ex. 15 (Dkt. No. 24-1 at 238-245). Even more telling, there's no competent evidence in the summary judgment record tying Gonzales's prescription and over-the-counter medications to the amphetamines, benzodiazepines, oxazepam, and temazepam for which he tested positive. To the contrary, according to the Medical Review Officer, "none of the medications listed, on [Gonzales's] submitted prescriptions, would account for the substances that tested positive on [his] drug test." Def. Ex. 18. The City was entitled to rely on this opinion when upholding Gonzales's termination, and he has done nothing on summary judgment to bring the opinion into question.

Although not briefed or even pled, Gonzales submits evidence on summary judgment explaining that City officials refused his request to submit his sample to an independent medical laboratory of his choosing. *See* Gonzales Decl. ¶ 15. But there is no due process right to have a drug test conducted at a laboratory of an employee's choice. And, the uncontroverted evidence shows that the City *did* subject Gonzales's sample to confirmatory testing. *See* Def. Ex. 18. Further, Gonzales doesn't dispute the validity of the test results or submit any evidence suggesting that he would've tested negative had a different laboratory been used. His argument has never been that the results were wrong, and to the extent he wishes to argue the test showed only approved medications he hasn't provided any evidence to substantiate that claim.

There is likewise no merit to Gonzales's contention that the City arbitrarily applied a drug testing policy towards him but not to other similarly situated employees. The City has submitted uncontroverted evidence showing that, unlike Gonzales, the other two Parks and Recreation Department employees, Rodolfo Venegas and Robert Sanchez, weren't drivers involved in on-the-job incidents. *See* Def. Ex. 20, Resps. 20 & 21. And Gonzales fails to identify

any other similarly situated Parks and Recreation Department employee who was treated differently than he.

For all these reasons, summary judgment should be granted on Gonzales's due process claims.[2]

*Gonzales's remaining claims*. The City hasn't moved for summary judgment on Gonzales's remaining claims. But in the interest of judicial efficiency, and because notice has been properly provided to Gonzales regarding those claims, the remaining claims should also be dismissed. Dismissal is warranted for the same reasons discussed above and for failing to cure the pleading deficiencies addressed in my prior Report and Recommendation adopted by the District Court.

First, as previously explained, Gonzales's equal protection claim can survive only if similarly situated employees were treated differently. *See Bryan v. City of Madison*, Miss., 213 F.3d 267, 276 (5th Cir. 2000). There is no evidence that Gonzales was treated differently than any other similarly situated Parks and Recreation employee with respect to the drug testing policy, or that the City possessed any discriminatory intent in ordering Gonzales to submit to a drug test. *See M.O.C.HA. Soc. Inc. v. City of Buffalo*, 872 F. Supp. 2d 264, 291 (W.D.N.Y. May 30, 2012). The absence of evidence as to the City's motives—contrary to Gonzales's contentions—does not create a genuine issue of material fact, it instead shows the absence of one. Moreover, a rational basis exists for Gonzales's termination. Accordingly, Gonzales's class-of-one equal protection claim must fail. *See Integrity Collision Ctr. v. City of Fulshear*, 837 F.3d

---

[2] *See Men of Color Helping All Soc., Inc. v. City of Buffalo*, 529 F. App'x 20, 24 (2d Cir. 2013) (rejecting due process claims resting on fire department's alleged repeated violations of its drug testing policy procedures where there was no evidence that the plaintiffs were prevented from disputing the fairness or accuracy of their test results and consequent terminations during the pre-termination hearing, the grievance process, or in state court).

581, 586-87 (5th Cir. 2016) (noting that employment decisions "by their nature involve discretionary decisionmaking" and, hence, are not amenable to a so-called class-of-one equal protection claim).

Gonzales's defamation, stigma, and liberty interest claims also fail as alleged. Because he has not alleged that the City disseminated his drug-test results outside the proper chain of command or that the drug-test results were inaccurate, Gonzales has again failed to state a claim upon which relief could be granted, and there are no genuine disputed issues of fact raised in connection with these claims. *See White v. Thomas*, 660 F.2d 680, 684 (5th Cir. 1981) ("A constitutionally protected liberty interest is implicated only if an employee is discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities."); *Johnson v. Martin*, 943 F.2d 15, 17 (7th Cir. 1991) (affirming dismissal of plaintiff's claim that employer's placement of drug test results in his personnel file violated his liberty interest in his reputation where plaintiff conceded that the results had not been disseminated to any potential future employers). Nor does Gonzales allege that he was denied the opportunity of a name-clearing hearing after it was requested. *See Quinn v. Shirey*, 293 F.3d 315, 320 (6th Cir. 2002) ("It is the denial of the name-clearing hearing that causes the deprivation of the liberty interest without due process."). Because these pleading deficiencies were addressed in my prior Report and Recommendation, and Gonzales was warned that failure to cure them would result in dismissal of these claims with prejudice, *see* Dkt. No. 16, and there are no genuine disputed issues of fact raised in connection with these claims, dismissal of these claims with prejudice is now appropriate.

### III. Conclusion

For the reasons discussed above, the City's Motion Summary Judgment Dkt. No. 24, be **GRANTED** and that this case be dismissed.

All matters for which the above-entitled and numbered case were referred to the undersigned have been considered and acted upon. **IT IS THEREFORE ORDERED** that the above-entitled and numbered case is **RETURNED** to the District Court for all purposes.

### Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy by certified mail, return receipt requested, to those not registered. Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The objecting party shall file the objections with the clerk of the court, and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions, or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusory, or general objections. A party's failure to file written objections to the proposed findings, conclusions, and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149-52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to timely file written objections to the proposed findings, conclusions, and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual

findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

      **IT IS SO ORDERED**.

      SIGNED this 5th day of August, 2019.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE